107    649
a206s  174

## Chicago City Ry. Co. v. Anna Mead.

1. INSTRUCTIONS—*That Effect of Injury and Bodily Pain May Be Considered in Estimating Damages is Proper.*—An instruction that if under the evidence and instructions of the court the jury find the defendant guilty, then in estimating the plaintiff's damages, if any, it will be proper for the jury to consider the effect, if any, of the injury upon the plaintiff, and also the bodily pain and suffering, if any, she sustained, and all damages, if any, charged in the declaration and which from the evidence are shown to be the necessary and direct result of the injury complained of, is proper.

2. CARRIERS OF PASSENGERS—*Presumption of Negligence Where an Accident Happens to Passenger.*—When an accident happens to a passenger upon a railway by the running of the train, the spreading or breaking of the rails, or because of a collision between two trains operated by the company whose passenger the injured person is, a presumption of negligence by the carrier arises.

Trespass on the Case, for personal injuries.   Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902.   Affirmed.   Opinion filed April 28, 1903.

WILLIAM J. HYNES, JOHN B. BRADY and C. LeROY BROWN, attorneys for appellant; MASON B. STARRING, of counsel.

JAMES C. McSHANE and F. A. ROCKHOLD, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This is an appeal from a judgment for $3,500 obtained

by appellee in an action brought by her to recover damages for personal injuries by her sustained while a passenger of appellant's. Upon the trial it appeared that appellee, a married woman about thirty years of age, while riding in one of appellant's cars was injured by a collision between two of such cars. The accident occurred June 19, 1900. Appellant and other passengers noticed that at a switch the car in which she was riding was about to come to a head collision with another car. Being alarmed, appellant rose to her feet, and she says when the crash came was thrown forward upon the seat in front of her; that she struck this seat at a point near the top of her abdomen, striking against the back of the seat in front of her, and was jammed back into the seat in which she had been sitting prior to her rising up; that she struck the seat in front violently and then rebounded back against the seat she had occupied, her back and shoulder striking it; that she attempted to get up and found she could not move her left foot and felt as if she had been stung; that she got up and went with another lady across the street upstairs into the office of Dr. Lawrence, where she was examined by him. She testified that Dr. Lawrence discovered a broken rib, but in this she is not corroborated by the doctor; that an examination was made of her and her side bandaged; that they bandaged her across the spot where she had the pain; that he then gave her some medicine and she was carried down stairs on a stretcher, put in a wagon and taken home. She further testified that her general condition prior to the injury was that she had been fairly well, did her own work, with help, and ran a millinery store employing two to four persons therein; that at the time of the accident she had one child, past ten years of age; that Doctors Arnold and Gray attended her after she was taken home; that she remained under Dr. Arnold's care for about two weeks and was in bed during such time; that the pain in her abdomen did not leave her for two weeks; that she did not sleep; that her side was sore and pained her; that she had a great deal of pain in her shoulder blade; that the loss of all sensation in

her hand and foot ceased after the pain began in her side and abdomen; that at the expiration of two weeks she went from her bed to a cot and remained in that way for about a month; that since that time her health has been such that she had been under the doctor's care, doctoring; that she has had a great deal of pain in the small of her back and through the abdomen and has never been without pain in her side; that on the fourth of August succeeding the injury, Dr. Weir made an examination of her; that her health has been very poor since the accident and she has taken medicine for pleurisy and for her pains; that she continued to run her store a year after the accident, and since then gave up the store and has been living at home, not engaged in any business. Dr. Weir testified that he examined plaintiff August 4, 1900; that her general appearance was pale, anemic; that she was generally nervous and then in a weak condition; that her eyes were normal, one ear congested, inflamed and with a slight discharge therefrom; that she had a hacking cough; that he saw her each day for three or four days and on the fourth day made a vaginal examination, examining the ovaries, womb and bladder; that her womb was retroverted; that she has been a nervous patient, weak nervously and still in a nervous condition; that he saw no reason why she should not make a complete recovery when her uterus is replaced; that when he examined her she had a very annoying cough and bronchitis, with pleurisy on the left side; that during his treatment of her chest, symptoms cleared up, except the pain in her left side; her cough pretty nearly cleared up and her general condition was much better. The decided weight of the evidence was that none of her ribs was fractured by the accident. As to whether the retroversion of her womb was due to the accident, the testimony was contradictory with, as it appears to us, the weight thereof with the defendant. The majority of the physicians who testified declared that a retroversion of the womb could not be caused by any blow that was not very severe and which did not produce severe contusions of the

body surrounding and protecting the womb. There was other testimony tending to show that the retroversion of the uterus was due to ailments afflicting her prior to the accident. While we have great doubts as to whether the retroversion of the uterus was due to the accident and also are inclined to think that much of the pain she has suffered since the accident is due to causes existing prior thereto, we are not able to say the evidence is such that the verdict of the jury, sanctioned as it has been by the trial court, ought to be reversed.

Appellee, while a passenger, was injured by the negligence of appellant. She is entitled to some damages for such injury. Whether the $3,500 awarded her is excessive, under the evidence, depends largely whether the retroversion of the uterus was due to the accident or to causes that anti-dated it.

Appellant urges that it was error for the court to, at the instance of the plaintiff, give the following instruction:

" The court instructs the jury that if under the evidence and instructions of the court the jury find the defendant guilty, then in estimating the plaintiff's damages, if any, it will·be proper for the jury to consider the effect, if any, of the injury upon the plaintiff, and also· the bodily pain and suffering, if any, she sustained, and all damages, if any, charged in the declaration and which from the evidence are shown to be the necessary and direct result of the injury complained of."

This instruction may be subject to technical criticism. It has, however, been substantially approved in Chicago, Burlington & Quincy Railroad Company v. Warner, 108 Ill. 545. In N. C. St. R. R. Co. v. Gastka, 27 Ill. App. 522, and in the latter case by the Supreme Court in 128 Ill. 613.

The court refused to give two instructions asked by appellant, one of which was to the effect that if the injury happened without negligence on the part of the defendant she could not recover, and the other that if her injury could only have been prevented by the exercise of a degree of care and caution not reasonably practical in the operation of the defendant's railroad, then she could not recover. Each of

these instructions stated the law; yet neither was really applicable to the facts of this case and the giving of either might have had a tendency to confuse the jury.

It was upon the trial undisputed that the plaintiff, while appellant's passenger, was injured by a head to head collision of two of its cars; that this happened upon a public street and in the ordinary operation of its cars by appellant and without interference by anything or cause over which appellant did not have full and complete control.

When an accident happens to a passenger upon a railway by the running of the train, the spreading or breaking of the rails, or because of a collision between two trains operated by the company whose passenger the injured person is, a presumption of negligence by the carrier arises. Hutchinson on Carriers, Sec. 799–800; Louisville Ry. Co. v. Faylor, 25 N. E. Rep. 869; Graham v. Railway Co., 39 Minn. 81.

Appellant moved in the court below for a new trial, because of what it terms newly discovered evidence. The evidence which appellant was unable to produce upon the trial and which it claims it could bring forward upon another trial, can not properly be classified as newly discovered. Dr. Arnold, whose testimony appellants insist it will produce upon another trial, had, prior to the trial now under consideration, been interviewed at great length by one of the attorneys for appellant. Appellant expected to call Dr. Arnold as a witness upon the trial of the cause. He had attended the plaintiff as her physician shortly prior to and upon the night after the accident, as well as for some months thereafter. Dr. Arnold, whose affidavit was read upon motion for new trial in the court below, left the city of Chicago and went to Toronto, Canada, a few days prior to the trial. His testimony, according to the affidavit made by him, would have been material and might have proved very useful to appellant. It is manifest that appellant knew before the trial began what Dr. Arnold would testify to. Appellant should, therefore, before the beginning of the trial have ascertained whether it could obtain the testimony of Dr. Arnold as a witness therein. And if

he was away so that he could not attend upon a trial, and there was not time to take his deposition, appellant might have asked for a continuance. This it did not do.

Finding no error requiring a reversal of the judgment in this case it is affirmed.